USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/16/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
INSURED ADVOCACY GROUP, LLC,                           :
:
Plaintiff,              :
:                    23-cv-07212 (LJL)
-v-                         :
:                    OPINION AND ORDER
SPARTAN SERVICES CORP. *et al.*,                       :
:
Defendants.             :
:
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Spartan Services Corp. ("Spartan"), Francesca D'Orso ("D'Orso"), Gabriel

Gil ("Gil"), and Pablo Camilo Garcia ("Garcia" and with D'Orso and Gil, the "Individual

Defendants," and with D'Orso, Gil, and Spartan, "Defendants") move, pursuant to Federal Rule

of Civil Procedure 12(b)(6), to dismiss Plaintiff's Second Amended Complaint ("SAC") for

failure to state a claim upon which relief can be granted. Dkt. No. 16.[1]

For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the Court accepts as true the well-pleaded allegations of the

SAC as supplemented by documents incorporated by reference. *See Gray v. Wesco Aircraft*

*Holdings, Inc.*, 454 F. Supp. 3d 366, 382–82 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir.

2021) (summary order).

---

[1] Defendants' motion originally was directed at Plaintiff's amended complaint. Dkt. No. 16. On
December 22, 2023, Plaintiff filed a second amended complaint solely to correct its allegations
with respect to diversity jurisdiction. Dkt. No. 28. By order of January 22, 2024, the Court
indicated, without objection, that it would treat the motion to dismiss the amended complaint as
directed against the second amended complaint. Dkt. No. 29.

Plaintiff Insured Advocacy Group ("Plaintiff" or "IAG") is a Texas limited liability company whose principal place of business is Texas.  Dkt. No. 28 ¶ 2.  Spartan is a Florida corporation whose principal place of business is Florida.  *Id*. ¶ 4.  D'Orso is President of Spartan and Gil and Garcia are shareholders of Spartan or exercise actual control over Spartan.  *Id*. ¶¶ 5–6.  Spartan provides property damage services to customers ("Services") in consideration for, in part, the customer's execution of an assignment of benefits ("AOC") or a letter of protection ("LOP") for claims that the customer might have against an insurer or other responsible party ("Responsible Party") for the costs incurred by the customer in connection with the applicable property damage including, but not limited to, the costs incurred by the customer to Spartan for the Services that Spartan provides to the customer.  *Id*. ¶ 9.

Plaintiff and Spartan are parties to a May 13, 2022 First Party Claims Non-Recourse Sale and Assignment Agreement, as amended and supplemented from time to time (the "Agreement").  *Id*. ¶ 12.[2]  The Agreement gives Plaintiff the option to purchase one or more of Spartan's Accounts and Account Balances (together with the applicable AOC), defined as the Selected Accounts, in exchange for a purchase price calculated as a percentage of the Portfolio Receivable payable at the Closing.  Dkt. No. 28-1 ¶ 2.1.  Upon Plaintiff's payment of the Purchase Price, Plaintiff obtains all rights, title, and interest to the Selected Accounts, free and clear of any lien, encumbrance, security interest, or other restriction of any kind or type.  *Id*.  The Agreement contemplates that "all Account Balance payments are to . . . be made to Plaintiff." *Id*. ¶ 2.4.1.  The Agreement also provides, however, that in the event that Spartan receives payments or other consideration paid by or on behalf of a Customer with respect to an Account purchased by Plaintiff, that Spartan "shall report such payments to [IAG] and, within forty eight

---

[2] The Agreement is governed by Texas law.  Dkt. No. 28-1 ¶ 9.1.1.

(48) hours of receipt, shall follow the instruction of [IAG]" to remit payment to IAG. *Id*. The Agreement additionally states that any payments received by Spartan and made by or on behalf of an Account Obligator, a Responsible Party, or a Customer in connection with an Account purchased by IAG shall be held by Spartan in trust for Plaintiff and shall be surrendered and delivered to Plaintiff. *Id*. ¶ 2.4.2.

Article 6.1 of the Agreement provides:

> Seller intends that its transfer and assignment under this Agreement shall constitute an absolute assignment and sale of the Selected Accounts, the Account Balances and the associated AOCs, from Seller to Buyer and shall provide Buyer with the full benefit of ownership of the Selected Accounts, the Account Balances, and the associated AOCs. After the Closing Date, the beneficial interest in, and title to, the Selected Accounts, the Account Balances, and the associated AOCs, conveyed by this Agreement shall not constitute, under any applicable bankruptcy or non-bankruptcy laws, property, or interests in property of the Seller.

Dkt. No. 28-1 Art. 6.1.

Article 8 of the Agreement sets forth the Events of Default and the Effect of Default. Dkt. No. 28-1 Art. 8. Under Article 8.1, the failure of Spartan to pay any of its obligations or its failure at any time and immediately upon Plaintiff's request to fully assist and cooperate in connection with efforts to collect an Account Balance is an Event of Default. Dkt. No. 28 ¶ 13; Dkt. No. 28-1 ¶ 8.1. Upon the occurrence of an Event of Default, Plaintiff has the right to immediately terminate the Agreement, at which time all of Spartan's obligations become immediately due and payable without notice. *Id*. ¶ 8.2.

On or about May 15, 2022, IAG and Spartan entered into various Purchase Addenda to the Agreement whereby IAG agreed to purchase various accounts from Spartan ("Subject Accounts"). Dkt. No. 28 ¶ 14. In 2023, Spartan admitted to Plaintiff that it had received settlement proceeds from Responsible Parties in connection with a number of Subject Accounts but had failed to remit those proceeds to Plaintiffs, including the following: *Carrasco v. Castle*

*Key Insurance Company* ("Castle"), *Liang v. Citizens Property Insurance Corporation* ("Citizens"), *De La Cuesta v. Citizens*, *Husbands v. Citizens*, *Garcia v. Citizens*, *Jean v. Citizens*, *Reyes v. Citizens*, *Fernandez v. Citizens*, *Gonzalez v. Citizens*, *Brijanand v. Citizens* and *Rodriguez v. State National Ins. Co.  Id.* ¶ 15.

By letter dated July 28, 2023, Plaintiff demanded that Spartan immediately deposit the Unremitted Proceeds from four accounts to the bank account previously designated by Plaintiff pursuant to the Agreement, *id*. ¶ 17; Dkt. No. 28-4, but Spartan refused to do so, Dkt. No. 28 ¶ 17.

Plaintiff alleges, upon information and belief, that Spartan continues to receive settlement proceeds from Responsible Parties in connection with the Subject Accounts without remitting those proceeds to Plaintiff. *Id*. ¶ 18. In addition, Plaintiff has recently learned that Spartan has purported to sell to third parties Subject Accounts that it previously sold to IAG, including Ester Laforet (FPI234832-00) and Heriberto Perez (227261-00). *Id*. ¶ 19.

Plaintiff asserts two counts for breach of contract against Spartan, *id*. ¶¶ 21–33, a count for conversion against Spartan and the Individual Defendants, *id*. ¶¶ 34–37, and a count for violation of the Texas Theft Liability Act ("TTLA") against Spartan and the Individual Defendants, *id*. ¶¶ 38–42. It also seeks a constructive trust against Spartan, *id*. ¶¶ 43–46, and accounting against Spartan, *id*. ¶¶ 47–51.

## PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint against Spartan on August 15, 2023. Dkt. No. 1. On September 22, 2023, Spartan filed a motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for relief. Dkt. Nos. 6–7. In response, on October 24, 2023, Plaintiff filed an amended complaint naming Spartan and the Individual Defendants as defendants. Dkt. No. 15.

4

On November 7, 2023, Defendants filed this motion to dismiss the amended complaint for failure to state a claim for relief along with a memorandum of law in support of the motion. Dkt. Nos. 16, 18.  On December 1, 2023, Plaintiff filed a memorandum of law in opposition to the motion to dismiss.  Dkt. No. 21.  On December 15, 2023, Defendants filed a reply memorandum of law in further support of their motion to dismiss.  Dkt. No. 25.

By order of December 20, 2023, the Court gave Plaintiff leave to file a Second Amended Complaint ("SAC") limited to addressing the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, on the understanding that the Court would treat the papers filed in relation to the motion to dismiss the amended complaint as directed to the SAC.  Dkt. No. 27.  On December 22, 2023, Plaintiff filed the SAC.  Dkt. No. 28.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.,*] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a

5

reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

When adjudicating a motion to dismiss under Rule 12(b)(6), the court considers not only the well-pleaded allegations of the complaint but documents incorporated by reference and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## DISCUSSION

Defendants argue that the SAC should be dismissed in its entirety. Defendants argue that (1) Plaintiff's causes of action for breach of contract and for an accounting (Counts I, II, and VI) should be dismissed because Plaintiff failed to satisfy a condition precedent of providing Spartan notice and an opportunity to cure, Dkt. No. 18 at 8–10; (2) the causes of action for conversion and violation of the Texas Theft Liability Act (Counts III and IV) should be dismissed as against the Individual Defendants because the SAC fails to allege conduct other than on behalf of Spartan, *id.* at 3–4; (3) the cause of action for violation of TTLA fails because Plaintiff has not alleged a theft occurring in Texas, *id.* at 4–5; (4) Plaintiff's claim for conversion (Count III) fails because it does not allege conduct independent of a contract breach or specifically identify the monies allegedly owed, *id.* at 5–7; and (5) Plaintiff's Count V for constructive trust fails for failure to specifically identify the monies allegedly owed, *id.* at 7–8.[3]

The Court takes each argument in turn.

---

[3] For ease of reading and understanding, the Court addresses Defendants' arguments in the order of the causes of action to which they are addressed rather than in the order in which they are presented in Defendants' memorandum of law in support of the motion to dismiss and their reply memorandum of law in support of the motion to dismiss.

I.      **Defendant's Motion to Dismiss Counts I, II, and VI**

A.      **Notice-and-Cure Provision**

In Count I of the SAC, Plaintiff alleges that Spartan breached the Agreement and is in default by diverting and failing to remit to it "proceeds that Spartan received and continued to receive in connection with the Subject Accounts." Dkt. No. 28 ¶ 23. Count II alleges that under Article 7.3 of the Agreement, in the event Spartan was in breach of any representation or warranty relating to an account that IAG purchased from Spartan ("Defective Account"), IAG had the right upon written notice to demand that Spartan either repurchase the Defective Account or exchange the Defective Account with another account of substantially equivalent value ("Replacement Account"), but that Spartan breached the Agreement and defaulted by failing to either repurchase Defective Accounts from Plaintiff or to provide Plaintiff with qualified Replacement Accounts. *Id.* ¶ 28–30. Count VI alleges that Spartan has failed to provide Plaintiff with the monthly reports required by Article 2.4.1 of the Agreement and thus that Plaintiff should be ordered to provide a full accounting of all Accounts that Plaintiff has purchased from Spartan. *Id.* ¶¶ 47–51.

Spartan argues that all three Counts should be dismissed for failure to plead satisfaction of a condition precedent. Dkt. No. 18 at 8–10. With respect to Counts I and VI, Spartan points to Article 9.4 of the Agreement which provides:

> Notice of Breach. Upon discovery by the Seller of (i) any breach of the Agreement by Seller, including, but not limited to, a breach of any of the representations and warranties of the Seller set forth in this Agreement, or (ii) any material adverse change in Seller's business that could negatively affect any of the Accounts or Account Balances, Seller shall give Buyer written notice, describing the issue in reasonable detail, within three (3) Business Days following such discovery.

Dkt. No. 28-1 ¶ 9.4. With respect to Count II, Spartan points to Article 7.2, which provides:

> Notification. Buyer shall notify Seller in writing of the circumstances which Buyer has discovered which give rise to Buyer's right to require Seller to repurchase any

7

> Selected Account or Account Balance.  Seller shall have five business (5) days from receipt of written notification from Buyer, to consummate the repurchase and refund the Purchase Price.  Seller's failure to timely repurchase any Selected Account shall constitute an event of default.

*Id.* ¶ 7.2.

Spartan acknowledges that the SAC cites to and attaches Plaintiff's email to it of July 28, 2023, in which IAG demanded that, within three days, Spartan place the settlement proceeds from four designated accounts into the designated sweep account.  Dkt. No. 28-4.  But Spartan argues that the email is insufficient to satisfy Articles 7.2 and 9.4 because it does not state that it is a notice of a breach and opportunity to cure, does not reference any specific section of the Agreement, and identifies only four accounts, not the more than 13 accounts IAG references in the SAC.  Dkt. No. 18 at 9–10.

Plaintiff responds that its July 28, 2023 email satisfies its requirements with respect to the diversion of proceeds claim asserted in Count I, that its emails of June 19, 2023, and June 22, 2023 satisfy its requirements with respect to the failure to repurchase accounts pleaded in Count II, and that there is no notice requirement with respect to its demand for an accounting pleaded in Count VI of the SAC.  Dkt. No. 21 at 6–7.

Under Texas law, notice and cure clauses are generally enforceable as valid contract terms.  *See Duncan v. Woodlawn Mfg., Ltd.*, 479 S.W.3d 886, 895 (Tex. App. 2015) (citing *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex. 1982)).  However, the effect that failure to comply with a notice and cure provision might ultimately have on a party's claims on the merits—whether it prevents them from recovering for the other party's breach, constitutes a separate breach of the contract, or yields some other result—is a separate question from whether and with what specificity compliance with a notice and cure provision must be pled in the first instance at the motion to dismiss stage.  Indeed, the cases that Defendants cite regarding

8

enforcement of notice and cure provisions are not in the motion to dismiss posture and thus do not speak to what a plaintiff must plead at the motion to dismiss stage. *See Duncan*, 479 S.W.3d at 895 (affirming a take nothing judgment in favor of defendant employer following jury trial even though defendant did not comply with notice and cure provision of employment contract); *Ogden*, 640 S.W.2d at 233 (reversing judgment for defendant following a jury trial because foreclosure notice related to real property was insufficient); *Neurobehavorial Assocs., P.A. v. Cypress Creek Hosp., Inc.*, 995 S.W.2d 326, 332 (Tex. App. 1999) (reversing grant of summary judgment for party where notice and cure provision was not complied with and therefore agreement may not have been properly terminated); *Emerald Forest Util. Dist. v. Simonsen Const. Co., Inc.*, 679 S.W.2d 51, 54 (Tex. App. 1984) (reversing judgment following jury trial and noting, in part, that proper notice was not given under construction contract).

To state a cause of action in federal court, a party must comply with the Federal Rules of Civil Procedure and cases interpreting those rules, such as the pleading standards set out in *Iqbal* and *Twombly*. But those sources tell parties only how to plead, not what to plead for a state law cause of action. To determine what a party must plead for a state law cause of action, the Court looks to state law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hanna v. Plumer*, 380 U.S. 360 (1965). Thus, whether Plaintiffs have sufficiently stated a cause of action for breach of contract depends on the elements for breach of contract under Texas law. *See also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure ("Wright & Miller") § 1235 (4th ed. 2024) ("The complaint in a contract action must contain a short and plain statement of the claim as is required by Federal Rules of Civil Procedure 8(a) and 8(d) . . . If the applicable law makes the performance or occurrence of conditions precedent an element of the contract claim, then such an allegation must be included in the complaint.").

9

The elements of a breach of contract claim under Texas law are: 1) existence of a valid contact; 2) performance by plaintiff; 3) breach by defendant; and 4) damages sustained by plaintiff. *See Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Plaintiff here has pled that it and Spartan are parties to the Agreement, that Spartan has refused to make required payments under the Agreement, that all conditions precedent have been performed or have been waived, and that IAG has been damaged as a result. *See* Dkt. No. 28 ¶¶ 12–26.

Defendants contend that Plaintiff's allegations do not suffice under Federal Rule of Civil Procedure 8. Dkt. No. 18 at 9. The function of a complaint under Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); the complaint must allege sufficient facts "to raise a right to relief above the speculative level," *id*. But Rule 8 only requires a short and plain statement of the claim in a contract action. Wright & Miller, § 1235. Plaintiffs can allege in general terms that they have satisfied their obligations under a contract. *See Cooper v. Harvey*, 108 F. Supp. 3d 463, 470 (N.D. Tex. 2015) (plaintiff had sufficiently stated a claim for breach of contract where plaintiff alleged that he fully complied with his obligations under contract and all conditions precedent were satisfied); 2 Moore's Federal Practice – Civil § 9.04 ("[F]or a contract claim, it is sufficient that the pleader 'tracks the language' of Rule 9(c) by alleging 'all conditions precedent have occurred or been performed.'"). Plaintiff here has described and attached the contracts at issue and described its performance generally in the complaint, such as by stating that IAG made various demands for funds and Spartan refused to transfer the money, and stated that all conditions precedent were performed or waived. *See* Dkt. No. 28 ¶¶ 16–17, 20, 28–29.

Where the plaintiff has alleged the existence of an agreement, identified the obligations of the defendant, pled facts to establish non-performance, and pled her own performance generally, the plaintiff has satisfied Rule 8.  The plaintiff need not identify all of her obligations under the agreement and allege that she has satisfied each of them.  The defendant, who is the counterparty to the agreement, is in a position to know those obligations and to defend on the grounds that the plaintiff has not satisfied them.

Defendants also raise that a party seeking to recover under a contract bears the burden of proving that conditions precedent have been satisfied.  *See* Dkt. No. 18 at 8 (citing *Wakefield v. Ayers*, 2016 WL 4536454, at *10 (Tex. App. Aug. 30, 2016)).  But *Wakefield* explains that where a plaintiff alleges that all conditions precedent have occurred, the burden shifts to defendant to specifically deny any conditions precedent.  2016 WL 4536454, at *10.  Thus, Plaintiff here has satisfied its initial burden by stating generally that all conditions precedent have occurred or have been waived.  Moreover, "[a] condition precedent is an act or event that must take place before performance of a contractual obligation is due."  *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007) (citing *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)).  Because a true condition precedent is a condition that must be satisfied before the other party's duty to perform arises, requiring such a condition to be plead at the motion to dismiss stage is simply another way of stating that the plaintiff must allege the defendant had a duty that was breached.  Notice and cure provisions are not such conditions—their compliance need not be established before the duty to perform arises. Such an interpretation here is also strongly reinforced by the terms of the contract itself, which describes in Article 4 certain conditions precedent to the obligations of the Seller and Buyer that must occur at or prior to the Closing while the notice and cure provisions Defendant raises in

§§ 7.2 and 9.4 do not claim to be conditions precedent nor do they otherwise use conditional language suggesting that the parties intended them to operate as such.  Dkt. No. 28-1 Art. 4, §§ 7.2, 9.4.  Texas law also does not generally favor reading conditions precedent into contracts. *See Cedyco Corp.*, 497 F.3d at 488; *see also C&C Road Constr., Inc.*, 574 S.W.3d 576, 587–88 (Tex. App. 2019) (finding notice and cure provision not to be a covenant, not a condition precedent, based on contractual language).

In any event, as written, Section 9.4 imposes obligations on *Spartan*, as the Seller, to alert IAG if Spartan discovers that *it itself* is in breach or has adverse changes in its business, not any obligations on IAG as the Buyer.  *Id*. § 9.4.  And as to Section 7.2, Plaintiff has specifically attached emails to the SAC showing it provided notice of the selected accounts and gave Defendants the opportunity to buy back the accounts and refund the purchase price or to execute the swap.  Dkt. No. 28-5.  Nothing more is required at the pleading stage.

Plaintiff here has pleaded the essential elements of a claim for breach of contract under Texas law sufficient to survive a motion to dismiss.

## B.    Accounting

With regard to Plaintiff's claim for Accounting (Count VI), Plaintiff argues that Article 2.4.1, which requires that Spartan provide IAG with monthly reports, does not set forth any notice or cure requirements.  Dkt. No. 21 at 7.  Defendants do not appear to dispute this in their memoranda of law.  *See* Dkt Nos. 18, 25.  Plaintiff's claim under Count VI is a demand for accounting, not an allegation that Spartan breached the contract by failing to provide accounting and that Plaintiff seeks damages based on that breach.

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action."  *Brown v. Cooley Enters., Inc.*, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011) (quoting *Michael v. Dyke,* 41 S.W.3d 746, 754 (Tex. App. 2001));

*see also Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 737 (E.D. Tex. 2011).  If it is sought as a remedy, the plaintiff must wait until determination of liability.  *See Watson*, 814 F. Supp. at 737.  If it is a separate, equitable cause of action, it is proper "when the facts and accounts in issue are so complex that adequate relief cannot be obtained by law."  *Id*.  Additionally, in order to be entitled to an accounting, a party usually must have a contractual or fiduciary relationship with the one from whom the party seeks the accounting.  *Brown*, 2011 WL 2200605 at *1 (citing *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App. 1983)).

Plaintiff has alleged that it has a contractual relationship with Spartan.  Plaintiff has also alleged that the contractual relationship requires Spartan to provide them monthly reports and to produce certain documents.  To the extent Plaintiff seeks accounting as an equitable cause of action, it has not alleged that it is unable to obtain such information through ordinary discovery procedures.  *See Watson*, 814 F. Supp. at 738; *Donnelly v. JP Morgan Chase NA*, 2014 WL 429246, at *4 (S.D. Tex. Feb. 4, 2014).  To the extent Plaintiffs seek accounting as a remedy, it should await determination of liability.  Likewise, to the extent Plaintiff is essentially seeking specific performance of the contractual terms entitling it to certain documents, this too is an equitable remedy that might be awarded upon a showing of breach, rather than a separate cause of action.  *See Stafford v. S. Vanity Magazine*, 231 S.W. 3d 530, 535 (Tex. Ct. App. 2007).  Thus, at this stage, the cause of action for accounting is dismissed.

## II.      The Individual Defendants' Motion to Dismiss Counts III and IV

The Individual Defendants, D'Orso, Gil, and Garcia, move to dismiss Plaintiff's claims for conversion and violation of the Texas Theft Liability Act on grounds that they cannot be held liable individually under Texas law for acts that they took on behalf of the corporation for which they were an officer or director.  Dkt. No. 18 at 3–4.

"The general rule of corporate law is that officers of a corporation are insulated from personal liability arising from their activities performed in the scope of their duties for the corporation." *Portlock v. Perry*, 852 S.W.2d 578, 582 (Tex. App. 1993). "However, a corporate officer may be held individually liable for a corporation's tortious conduct if he knowingly participates in the conduct or has knowledge of the tortious conduct, either actual or constructive." *Id.* "A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); *Mayflower Inv. Co. v. Stephens*, 345 S.W.2d 786, 795 (Tex. Civ. App. 1960); *Permian Petrol. Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex. Civ. App. 1972). Thus, for example, "[a] corporate officer who converts the property of another to the use of the corporation, or who misapplies private funds in the hands of the corporation is personally liable to the person whose property or funds have been so misappropriated." *Permian*, 484 S.W.2d at 634; *see Cass v. Stephens*, 156 S.W.3d 38, 62–63 (Tex. App. 2004).

Plaintiff has not alleged sufficient facts to state a claim against any of the Individual Defendants for either conversion or violation of the Texas Theft Liability Act. The allegations against the Individual Defendants are sparse. The complaint alleges that D'Orso is President of Spartan, and that Gil and Garcia are either shareholder or exercise actual control over the operations of Spartan. Dkt. No. 28 ¶¶ 5–6. The complaint also alleges that Gil and Garcia have represented Spartan in its business dealings with IAG. *Id.* ¶ 8. However, there is no allegation of fact that any of the three individuals participated in any of the acts alleged to give rise to the claims of conversion or a violation of the Texas Theft Liability Act. It is not alleged that any of the Individual Defendants was aware that IAG had received settlement proceeds from the Responsible Parties or that any of them were involved in refusing to transfer the Unremitted

14

Proceeds to IAG.  In the absence of any such allegations, there can be no claim of individual liability.  Thus, the claims against the Individual Defendants are dismissed.

### III.    Defendants' Motion to Dismiss Count III for Conversion

Count III of the SAC is for conversion.  Plaintiff alleges that Spartan segregated and identified moneys that are owed to Plaintiff and have refused Plaintiff's demands that they surrender such moneys to Plaintiff, "with the intention of exercising dominion and control over said money in a manner that is inconsistent with the rights of [Plaintiff] to said moneys."  Dkt. No. 28 ¶¶ 35–36.  Plaintiff attaches to the SAC a list of the accounts that it alleges Defendants have failed to turn over.  Dkt. No. 28-6.  Defendants argue that the claim should be dismissed because the SAC fails to identify specific property that has been converted or a claim independent of that for breach of contract.  Dkt. No. 18 at 5–6.

Under Texas law, "[t]he unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion."  *Waisath v. Lack's Stores, Inc.*, 474 S.W. 2d 444, 447 (Tex. 1971).  "To establish a claim for conversion, a plaintiff must prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property."  *Burns v. Rochon*, 190 S.W.3d 263, 268 (Tex. App. 2006); *see Bookout v. Shelley*, 2022 WL 17173526, at *9 (Tex. App. Nov. 23, 2022); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 737 (2d Cir. 2010).

"Texas law has long distinguished tort liability from contract liability as between the parties to a contract, seeking to avoid the availability of both tort and contract liability for the

same conduct and the same kind of harm or loss." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Care Flight Air Ambulance Serv., Inc.*, 18 F.3d 323, 326 (5th Cir. 1994). However, "because the law of conversion and bailment imposes legal duties outside any contractual agreements, separate causes of action for breach of contract and conversion may arise from the same facts." *Id.* at 326. "To determine whether conduct that breaches a contract can also be a tort, Texas law requires a court to look to the origin of the duty owed and the nature of the resulting injury." *Id.* "[I]n order to allege both a breach of contract and the tort of conversion, the conversion damages [need not] be separate and distinct from the contract damages." *Id.* at 327–28. However, "if the use of the property constituted misappropriation only because it breached the parties' contract, then a breach of contract action is usually the plaintiff's sole remedy." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 726 (5th Cir. 2015). In other words, "[i]f the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Nat'l Union*, 18 F.3d at 326 (quoting *Sw. Bell v. DeLanney*, 809 S.W. 2d 493, 494 (Tex. 1991)).

"An action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." *JEMiller Invs., LLC v. VRC Cos., LLC*, 2020 WL 7010042, at *7 (N.D. Tex. Oct. 13, 2020) (quoting *Hous. Nat. Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App. Civ. 1981)). "[M]oney is subject to conversion only when it can be described or identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally."

16

*Wheat v. Am. Title Ins. Co.*, 751 S.W.2d 943, 944 (Tex. App. 1988); *see Crenshaw v. Swenson*, 611 S.W.2d 886, 891 (Tex. Civ. App. 1980).  An action for conversion of money will lie where the money is "(1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *Est. of Townes v. Townes*, 867 S.W.2d 414, 419–20 (Tex. App. 1993) (quoting *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App. 1992)).

The complaint states a claim for conversion.  Under the Agreement, Spartan owed Plaintiff "a tort-based duty not to exercise unauthorized dominion and control" over the Selected Accounts.  *Nat'l Union*, 18 F.3d at 326 (unauthorized sublease of aircraft could be both breach of contract and conversion).  Here, the Agreement imposed on Spartan the obligation to hold in trust for Plaintiff and to immediately surrender and deliver any payments Spartan received on the Selected Accounts.  Dkt. No. 28-1 ¶ 2.4.2.  But Plaintiff's claim for conversion springs from duties independent of that contractual obligation.  Under the Agreement, Plaintiff acquired all right, title and interest to the Selected Accounts upon the Closing Date.  *Id.* ¶ 2.1.  Accordingly, as of the Closing Date, Plaintiff had a property interest in and entitlement to the possession of the Selected Accounts.  Irrespective of the language of paragraph 2.4.2, then, Spartan owed a duty to Plaintiff in tort not to exercise dominion and control over the Selected Accounts to the exclusion of Plaintiff.  Spartan's exercise of dominion and control gives rise to a claim in conversion.  *See* Dkt. No. 28-1 ¶ 9.6 (providing that remedies are cumulative and that "no Right or remedy conferred upon or reserved to Buyer or Seller under this Agreement is intended to be exclusive of any other Right or remedy"); *see also Jones v. Hunt*, 12 S.W. 832, 833 (Tex. 1889) (where implied contract provided that defendant was to deliver to plaintiff, upon his demand, money received from an express company, defendant's refusal to deliver on demand was a breach of the

17

contract and conversion of the money, giving plaintiffs the right to recover by suit a judgment for the money with legal interest from the date of its conversion).

### IV.    Defendants' Motion to Dismiss Count IV for Violation of the TTLA

Count IV of the SAC alleges that Defendants violated the Texas Theft Liability Act.  The TTLA provides, in pertinent part, "[a] person who commits theft is liable for the damages resulting from the theft."  Texas Civ. Prac. & Remedies Code § 134.003.  The TTLA thus "provides a private cause of action for victims of theft, as defined by the Texas Penal Code." *Breckenridge Enters., Inc. v. Avio Alts., LLC*, 2009 WL 1469808, at *9 (N.D. Tex. May 27, 2009).  Plaintiff alleges: "Defendants, with felonious intent, have: (a) unlawfully deprived IAG of its rights to receive in Texas proceeds that [Defendants] received in connection with the Subject Accounts; (b) have unlawfully deprived IAG of its right to benefit in Texas from the proceeds that Spartan received in connection with the Subject Accounts; and (c) have unlawfully appropriated the proceeds that Spartan received in connection with the Subject Accounts for its own use instead of transmitting them to IAG in Texas."  Dkt. No. 28 ¶ 40.

Defendants argue that Plaintiff fails to state a claim for relief because the SAC does not allege a theft occurring in Texas.  Dkt. No. 18 at 4–5.

The elements of a TTLA claim are the elements of the alleged violation of the Texas Penal Code under which the claim is brought.  *Mid-Town Surgical Ctr., LLP v. Blue Cross Blue Shield of Tex.*, 2012 WL 3028107, at *4 (S.D. Tex. July 24, 2012).  The Texas Penal Code states that a person commits a theft "if he unlawfully appropriates property with intent to deprive the owner of property."  Tex. Pen. Code § 31.03(a).  An appropriation of property is unlawful if "it is without the owner's effective consent."  *Id.* § 31.03(b)(1); *see Mid-Town Surgical Ctr., LLP*, 2012 WL 3028107, at *4.  "For all [T]TLA claims, the plaintiff must establish: (1) the plaintiff had a possessory right to property was the provider of services; (2) the defendant unlawfully

18

appropriated property or unlawfully obtained services in violation of certain sections of the Penal

Code; and (3) the plaintiff sustained damages as a result of the theft." *Wellogix, Inc. v.

*Accenture, LLP*, 788 F. Supp. 2d 523, 542 (S.D. Tex. 2011).

The territorial reach of the Texas Penal Code is defined by Texas Penal Code § 104. That

statute states, in pertinent part:

> (a) This state has jurisdiction over an offense that a person commits by his own
> conduct or the conduct of another for which he is criminally responsible if:
>
>> (1) either the conduct or a result that is an element of the offense occurs
>> inside this state;
>>
>> (2) the conduct outside this state constitutes an attempt to commit an offense
>> inside this state;
>>
>> (3) the conduct outside this state constitutes a conspiracy to commit an
>> offense inside this state, and an act in furtherance of the conspiracy occurs
>> inside this state; or
>>
>> (4) the conduct inside this state constitutes an attempt, solicitation, or
>> conspiracy to commit, or establishes criminal responsibility for the
>> commission of, an offense in another jurisdiction that is also an offense
>> under the laws of this state.

Tex. Penal Code § 1.04.

A state generally has territorial jurisdiction only over crimes committed within the

boundaries of the state. *See Sabatino v. Goldstein*, 649 S.W. 3d 841, 848 (Tex. App. 2022) ("[A]

state only has the authority to enact and enforce criminal laws within its borders."). As a general

matter, a defendant cannot be held criminally liable in Texas for acts committed in another state.

*Allen v. State*, 620 S.W. 3d 915, 921 (Tex. Crim. App. 2021).

Plaintiff has not alleged acts of theft within the territorial reach of the TTLA. Texas law

distinguishes between crimes that cover the "conscious act of the wrongdoer, regardless of its

consequences" and crimes that are defined "so as to include some of the *consequences* of an act,

as well as the act itself." *Roberts v. State*, 619 S.W. 2d 161, 164 (Tex. App. 1981). The former

take place and are punishable only where the defendant acts; the latter are "generally regarded as having been committed where the consequences occur, regardless of where the act took place." *McGowan v. State*, 938 S.W.2d 732, 735 (Tex. App. 1996), *aff'd sub nom. Weightman v. State*, 975 S.W.2d 621 (Tex. Crim. App. 1998). Theft is a crime that is defined by the conscious acts of the wrongdoer regardless of its consequences. The crime of theft is complete when the defendant unlawfully appropriates property with the requisite intent. *See One 1985 Chevrolet v. State*, 852 S.W. 2d 932, 934 (Tex. 1993); *Anderson v. State*, 322 S.W.3d 401, 407–08 (Tex. App. 2010) (theft occurs when property is unlawfully appropriated by someone with intent to deprive the owner of that property and it is complete when all elements have occurred). In prosecuting theft, the state does not need to prove that the appropriation of property had any particular effect, or any effect at all, on the owner so long as it is done intentionally and without the owner's effective consent. It follows that, in order for the appropriation of property to constitute the crime of theft under Texas law, the act of appropriation must have taken place in Texas. The crime of theft does not depend on the residence of the victim or where she suffers the effects.

The SAC thus fails to state a claim for violation of the TTLA. There is no allegation that any misappropriation of property occurred in Texas. The essence of Plaintiff's claim is that Spartan misappropriated Plaintiff's property when Spartan converted money sent to it from the Selected Accounts to Spartan's own use. But Spartan is alleged to be a Florida corporation whose principal place of business is Florida. Dkt. No. 28 ¶ 4. Its principals are all citizens of Florida. *Id.* ¶ 7. The crime of theft thus occurred, if it occurred anywhere, in Florida and not in Texas. Although Plaintiff is a citizen of Texas, citizenship of the victim of the theft is not an element of the crime of theft under Texas law. Absent any allegation of theft in Texas, Plaintiff cannot plead the elements of a violation of the TTLA. *See Breckenridge Enters., Inc*, 2009 WL

20

1469808, at *9 ("[T]he Court is of the view that the Texas Penal Code would not provide for jurisdiction over the alleged theft, and therefore cannot be the basis for jurisdiction over the TTLA claim based on it.").[4]

## V.      Defendants' Motion to Dismiss Count V for Constructive Trust

Finally, in Count V of the SAC, Plaintiff asks that the Court impose a constructive trust in its favor and against Spartan for all monies that it has received or may receive in the future "in connection with the Subject Accounts" and to turn over all monies it has received or may receive in the future in connection with the Subject Accounts, based on the allegation that Spartan has improperly retained monies that it received and continues to receive in connection with the Subject Accounts in trust for Plaintiff.  Dkt. No. 28 ¶ 45.  Plaintiff attaches what it contends is a "partial list of said monies" to the SAC and asserts that Spartan would be unjustly enriched if it is permitted to retain the monies that it received in connection with the Subject Accounts.  *Id.* ¶¶ 45–46; Dkt. No. 28-6.

Defendants move to dismiss the count for constructive trust on grounds that the SAC fails to list any "specifically identifiable funds" in which the Plaintiff claims a legally recognized right.  Dkt. No. 18 at 7–8.

"A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015).  "Three elements are generally required for a constructive trust to be imposed under Texas law.  The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an

---

[4] Plaintiff relies on *Bates Energy Oil & Gas, v. Complete Oilfield Services*, 361 F. Supp. 633, 645, 647–48 (W.D. Tex. 2019), for the proposition that a Texas court would entertain a TTLA claim based on acts of theft occurring outside Texas, but that case did not consider the territorial reach of the TTLA.

identifiable res that can be traced back to the original property." *Id.* "'In order to fasten a constructive trust on property owned by the defendant, some particular property must be identified as to which plaintiff has an equity.'" *Id.* at 88 (quoting *Wheeler v. Blacklands Pro. Credit Ass'n*, 627 S.W.2d 846, 851 (Tex. App. 1982)). "That is, the party seeking a constructive trust on property has the burden to identify the particular property on which it seeks to have a constructive trust imposed." *Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 873 (Tex. 2017); *see also In re Hayward*, 480 S.W.3d 48, 52 (Tex. App. 2015) ("To prove an identifiable res, the proponent of the constructive trust must show that the specific property that is subject to the constructive trust is the same property—or the proceeds from the sale thereof or revenues therefrom—that was somehow wrongfully taken.").

Plaintiff claims that Exhibit F sets forth the specifically identifiable res over which it is entitled to a constructive trust. Dkt. No. 21 at 5. Defendants dispute the sufficiency of this list because the SAC states that a "partial list" of the monies Spartan has improperly retained is attached to the SAC. *See* Dkt. No. 28 ¶ 45, Dkt. No. 28-6. Plaintiff responds that the list includes the "specific funds which IAG currently is aware of that Spartan has improperly retained as to which IAG seeks the imposition of a constructive trust." Dkt. No. 21 at 5.

A constructive trust "is not a cause of action, only a remedy." *See In re Est. of Arrendell*, 213 S.W.3d 496, 504 (Tex. App. 2006); *see also Roach v. Berland*, 2014 WL 6772612, at *2 (N.D. Tex. Dec. 2, 2014) (dismissing constructive trust claim because it was a remedy, not a cause of action, but noting that parties were not precluded from later arguing for constructive trust as a remedy); *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 115 n.4 (5th Cir. 2019) ("A constructive trust is a practical mechanism to enforce [substantive counts in a complaint]—a remedy rather than a substantive claim."); 64 Tex. Jur. 3d Restitution and Constructive Trusts

§ 57 (same). Additionally, constructive trust is appropriate where there is not an adequate remedy at law. *See Flanagan v. Chesapeake Exploration*, LLC, 2015 WL 13814515, at *8 (N.D. Tex. Aug. 10, 2015) (dismissing constructive trust claim where plaintiffs alleged that defendants violated an agreement to pay certain royalties and there was no indication that the unpaid royalties and damages could not be ascertainable by mathematical calculation). Here, Plaintiff's claim for a constructive trust is based on the same facts that underlie its breach of contract and conversion claims. As in *Flanagan*, the amounts Plaintiff allege have gone unpaid in breach of the contract and damages should be ascertainable via a mathematical calculation and thus there is no need at this time for a constructive trust.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 16.


SO ORDERED.

Dated: July 16, 2024
        New York, New York

LEWIS J. LIMAN
United States District Judge

23